IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

METABYTE, INC.,

    Plaintiff,

  v.

NVIDIA CORP., DAVID COOK, VIATCHESLAV GOSTRENKO, ANDREI OSNOVICH, MICHAEL YAROSLAVTSEV, MIKHAIL KRIVEGA, and DOES 1-5,

    Defendants.

Case No. 12-0044 SC

ORDER GRANTING MOTION TO DISMISS

## I. INTRODUCTION

This is an action for copyright infringement, breach of contract, misappropriation of trade secrets, and related causes of action, arising out of the alleged theft of computer code by former employees of Metabyte Corporation ("Plaintiff"). Now before the Court is the above-captioned Defendants' motion to dismiss Plaintiff's complaint. ECF Nos. 1 ("Compl."), 45 ("MTD"). The motion is fully briefed, ECF Nos. 50 ("Opp'n"), 51 ("Reply"), and appropriate for decision without oral argument, Civ. L.R. 7-1(b). As explained below, the Court GRANTS Defendants' motion.

## II. BACKGROUND

Plaintiff and Defendant NVIDIA Corporation ("NVIDIA") are both software companies that develop and market computer graphics software and services, among other things. See Compl. ¶¶ 12-14, 26. Between 1994 and 1997, Plaintiff hired Defendants David Cook, Viatcheslav Gostrenko, Andrei Osnovich, Michael Yaroslavtsev, and Mikhail Krivega (the "Individual Defendants") to develop computer code for Plaintiff's 3D stereoscopic technology software and device driver products. Id. ¶ 14. These products "enable a three-dimensional, visually immersive display by presenting images separately to the left and right eye through specialized eyeglasses that a viewer wears to look at a computer screen." Id. The specific copyrighted software at issue in this case is called "Metabyte Wick3D eyeSCREAM." Id. ¶ 27. Other proprietary technology and information at issue in this matter was embodied in Plaintiff's products also sold under the name "eyeSCREAM." Id. ¶ 14. Collectively, all of the works embodying any of Plaintiff's copyright-protected and otherwise proprietary information are the "Metabyte Software."

While employed by Plaintiff, the Individual Defendants had access to the source code for the Metabyte Software, and all were bound by employee confidentiality agreements that prohibited them from disclosing Plaintiff's confidential information and required them to return all of Plaintiff's property in their possession upon leaving Plaintiff's employ. Id. ¶¶ 17-23, 31. The Individual Defendants all left Plaintiff between 1999 and 2001 to join NVIDIA, which was developing its own 3D stereoscopic software at the time. Id. ¶¶ 17-24, 26.

2

Plaintiff alleges that when the Individual Defendants joined NVIDIA, they copied the code for the Metabyte Software and took it to NVIDIA. Id. ¶ 29. Plaintiff asserts that NVIDIA then used the Individual Defendants' knowledge of Plaintiff's proprietary technology and the purportedly stolen Metabyte Software source code to create copies of the Metabyte Software as well as derivative works based on the Metabyte Software. Id. ¶¶ 13, 30. NVIDIA ultimately released its own 3D stereoscopic software product in early 2009 under the name "GeForce 3D Vision," now just called "3D Vision" (the "NVIDIA Software").

In January 2012, Plaintiff sued Defendants, asserting eight causes of action based on the facts described above: (i) copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.; (ii) violation of the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.; (iii) breach of contract; (iv) breach of the implied covenant of good faith and fair dealing; (v) misappropriation of trade secrets under California Civil Code section 3426, et seq.; (vi) intentional interference with contractual relations; (vii) unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (viii) common law unfair competition.

Defendants now move to dismiss Plaintiff's claims for violation of the CFAA, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, unfair business practices, and common law unfair competition. MTD at 1. Defendants do not challenge Plaintiff's claims for copyright infringement, breach of contract, or misappropriation of trade secrets. Id. Plaintiff, in turn, does

3

not oppose dismissal of its claims for breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, or common law unfair competition. Opp'n at 2.  Accordingly, this Order only evaluates the parties' arguments as to Defendants' alleged violations of the CFAA and UCL.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The court's review is generally "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1061 (9th Cir. 2008) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

///

## IV. DISCUSSION

### A. Plaintiff's CFAA Claim

The CFAA, 18 U.S.C. § 1030 et seq., establishes both civil and criminal causes of action for an array of actions concerning "protected computers," defined in relevant part as computers that are "used in or affecting interstate or foreign commerce or communication." Id. § 1030(e)(2). The CFAA is "designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir. 2009). The Ninth Circuit has recently made clear that the CFAA is not mean to serve as a supplement or replacement for misappropriation claims. United States v. Nosal, 676 F.3d 854, 862-63 (9th Cir. 2012) (en banc).

To prevail in a civil action under the CFAA, "a private plaintiff must prove that the defendant violated one of the provisions of [section] 1030(a)(1)-(7), and that the violation involved [among other things, loss to one or more persons during any one year period . . . aggregating at least $5,000 in value]." Brekka, 581 F.3d at 1131.

Plaintiff's CFAA claims are based on the Individual Defendants' copying the source code for the Metabyte Software and taking it and other property of Plaintiff with them when they left Plaintiff's employ. Compl. ¶ 30. Further, Plaintiffs allege that the Individual Employees had agreed to various confidentiality agreements that required them to maintain the secrecy of Plaintiff's property and return any confidential or proprietary

5

information to Plaintiff upon termination of their employment. Id. ¶ 31. Plaintiff asserts that it took steps to safeguard the Metabyte Software's secrecy and confidentiality, including using clean rooms and limiting access to the Metabyte Software. Id. ¶¶ 32-33. Based on these facts, Plaintiff alleges CFAA violations against the Individual Defendants for accessing Plaintiff's computers "without authorization or by exceeding authorized access," causing damage to Plaintiff as a result. See id. ¶¶ 49-55. Plaintiff asserts that this conduct violates sections of the CFAA that prohibit the following actions:

- "intentionally access[ing] a computer without authorization or exceeds authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).
- "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value," subject to exceptions not relevant to the instant matter. Id. § 1030(a)(4)
- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage." Id. § 1030(a)(5)(B).
- "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." Id. § 1030(a)(5)(C).

Defendants argue that Plaintiff's CFAA claim is groundless, primarily because Plaintiff never alleges that any of the Individual Defendants actually accessed Plaintiff's computers "without authorization or by exceeding authorized access." See MTD at 2-5. Absent these facts, according to Defendants, there can be no liability under the CFAA because the CFAA does not prohibit

6

1  "improperly disclosing or using confidential information in
2  violation of an employment agreement or policy," which, according
3  to Defendants, is all Plaintiff's complaint does.  MTD at 2-5.
4  Further, Defendants argue that NVIDIA as a corporate entity had
5  nothing to do with the alleged theft of code and that NVIDIA never
6  had access to Plaintiff's computer systems, and so the CFAA could
7  not apply to it in any event -- though the Court finds that this
8  argument is inapposite, since Plaintiff does not plead a CFAA
9  violation as to NVIDIA.  Id. at 4-5.  Finally, Defendants assert
10 that Plaintiff cannot plead harm under the CFAA because Plaintiff
11 never shows any damage that would exceed $5,000.  Id. at 5-6.
12      To show just how narrow the CFAA is and how much of
13 Plaintiff's claim is excluded from the statute's coverage,
14 Defendants rely on Nosal, 676 F.3d 854, in which the Ninth Circuit
15 held that the CFAA applied narrowly to punish hacking ("the
16 circumvention of technological access barriers"), not the
17 misappropriation of trade secrets or contravention of use policies.
18 Id. at 863.  In Nosal, employees of an executive search firm used
19 their authorized log-in credentials to download proprietary
20 information from a confidential database on their employer's
21 computer system, and then transferred that information to a
22 competitor, in violation of their employer's use restrictions on
23 the disclosure of confidential information to third parties or
24 using confidential information for any purpose except company
25 business.  See id. at 856.  The Ninth Circuit held that the CFAA
26 prohibits only the unauthorized procurement or alteration of
27 information, not its misuse or appropriation, and therefore the
28 phrase "exceeds authorized access" in the CFAA "does not extend to

7

1  violations of use restrictions." Id. at 863-64.  Defendants add
2  that even if Nosal does not bar Plaintiff's claim, Plaintiff has
3  failed to plead harm under the CFAA, since it pleads only
4  conclusory assertions as to damage and loss, rendering its
5  pleadings insufficient under Iqbal and Twombly.  See MTD at 6-7.
6       The problem with applying Nosal, according to Plaintiff, is
7  that Plaintiff has not alleged "exactly how the [Individual
8  Defendants] obtained access to the information they took to NVIDIA,
9  because [Plaintiff] does not know, at this point, how information
10 was obtained."  Opp'n at 4.  Plaintiff proposes several
11 hypothetical situations in which the Individual Defendants might
12 have undertaken some actionable behavior under the CFAA.  However,
13 Plaintiff claims that it cannot describe the precise method by
14 which each Individual Defendant obtained access to the contested
15 information until after discovery.  Id. at 4-5.  Even so, Plaintiff
16 states that it is inappropriate for the Court to assume that Nosal
17 bars Plaintiff's CFAA claim before Plaintiff obtains discovery.
18 See id. at 5.  In opposition to Defendant's arguments about whether
19 Plaintiff has pled harm, Plaintiff states that it should be offered
20 the opportunity to amend its complaint.  Id.  Defendants take issue
21 with Plaintiff's assertions as to the necessity of allowing
22 Plaintiff to proceed with discovery despite its stated lack of
23 knowledge about the Individual Defendants' access to the contested
24 information here.  See Reply at 2-3.  Defendants characterize this
25 as a fishing expedition prohibited by Rule 8.  Id. at 2.
26      The Court finds that Plaintiff has not pled facts giving rise
27 to a valid claim under the CFAA.  All of Plaintiff's facts suggest
28 that even if any Individual Defendant did take any part of the

Metabyte Software or any other proprietary material with him to NVIDIA, his access to that material occurred during his employment with Plaintiff. Moreover, Plaintiff never suggests beyond conclusory allegations that any Individual Defendant obtained such information without authorization or in excess of his authorization. Even if Plaintiff had the Individual Defendants sign various agreements and took steps to keep its information confidential and secret, that is not sufficient to plead a CFAA claim after Nosal. See 676 F.3d at 863-64. Indeed, Plaintiff's facts suggest that at times the Individual Defendants had access to the information at issue, that access was authorized (even if circumscribed) and not exceeded. They were Plaintiff's employees, hired to work on the very information presently at issue. Bare suggestions that they hacked into Plaintiff's computers to get information are implausible. To plead a valid CFAA claim, Plaintiff would need to allege facts that the Individual Defendants accessed information without authorization or exceeded their authorization, see id.; Brekka, 581 F.3d at 1131, and not -- as the complaint suggests -- that the Individual Defendants merely misappropriated information, infringed copyright, or breached a contract. The CFAA's scope is narrow, and the Court is not inclined or permitted to expand it.

　　Accordingly, Plaintiff's CFAA claim is DISMISSED. Plaintiff has leave to amend, keeping in mind Rule 11, if Plaintiff is able to plead facts giving rise to a valid CFAA claim as described above, within the bounds of Nosal and Brekka. Plaintiff must also plead facts about its alleged damages under the CFAA.
///

### B. Plaintiff's UCL Claim

Plaintiff's UCL claim is pled on the facts described above, which Plaintiff alleges constitute unfair competition and unlawful and unfair business practices on Defendant NVIDIA's part. Compl. ¶¶ 82-83. Defendants respond that the Copyright Act, 17 U.S.C. § 101 et seq., preempts Plaintiff's UCL claim.[1]

State law causes of action are preempted under the Copyright Act if two elements are present. Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998). "First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act." Id. (citing 17 U.S.C. § 301(a)). "Second, the work involved must fall within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. sections 102 and 103." Id. The parties do not dispute that the Metabyte Software, considered a literary work under the Copyright Act, falls within the subject matter of the Copyright Act per 17 U.S.C. sections 102 and 103. Opp'n at 5-6; Reply at 4-6. They dispute whether the rights Plaintiff asserts under the UCL are "rights that are equivalent" to those protected by the Copyright Act. See Opp'n at 5-6; Reply at 4-6.

Plaintiff avers that its UCL claim is based on "allegations of contractual breach and misappropriation of trade secrets," claims not disputed by Defendant, and that because those causes of action "constitute unlawful and unfair practices wholly apart from any issue of copyright infringement," the UCL claim is not preempted.

---

[1] The Court does not address the parties arguments about whether California's Uniform Trade Secrets Act ("CUTSA"), Cal Civ. Code § 3476 et seq., preempts Plaintiff's UCL claim because the Court finds that claim preempted under the Copyright Act.

10

1  Opp'n at 5-6.  Further, Plaintiff states that its entitlement to an
2  injunction prohibiting the copying and distribution of the Metabyte
3  Software -- undisputedly rights protected by the Copyright Act --
4  is merely a statement of the remedy requested, not a concession
5  that its UCL claim is essentially a copyright claim.  Id. at 6.
6       Defendant responds first that the complaint only alleges
7  breach of contract and misappropriation of trade secrets against
8  the Individual Defendants -- not NVIDIA -- so those claims cannot
9  be the foundation of a UCL claim against NVIDIA, the only Defendant
10 accused of violating the UCL.  Reply at 5.  Second, Defendant
11 argues that Plaintiff's statements about misappropriation of trade
12 secrets and the distinction between a remedy requested and a
13 violation giving rise to that remedy are red herrings, since
14 whatever the violation or remedy, Plaintiff's UCL claim "arises
15 solely from the alleged unauthorized use and reproduction of a
16 copyrighted work" and is preempted.  Id. at 4-5 (citing Kodadek,
17 152 F.3d at 1213).
18      Defendant is right.  Plaintiff's UCL claim is alleged solely
19 against NVIDIA, and NVIDIA as a corporate defendant is not alleged
20 to have breached any contract, intentionally interfered with any
21 contract, or misappropriated any trade secret.  The only
22 incorporated allegations as to NVIDIA that remain in Plaintiff's
23 complaint are that NVIDIA created and sold products -- the NVIDIA
24 Software -- that was substantially similar to the Metabyte Software
25 and that included Plaintiff's proprietary information by way of
26 direct copies and derivative works, acquired through through the
27 Individual Defendants' alleged theft and copying of the Metabyte
28 Software.  See Compl. ¶¶ 13, 26, 30, 34, 36.  Reproduction of

11

copyrighted works, preparation of derivative works, and distribution of copies to the public are all rights granted under the Copyright Act. 17 U.S.C. § 106; Kodadek, 152 F.3d at 1213.

The Court finds that Plaintiff's UCL claim is preempted by the Copyright Act. See Kodadek, 152 F.3d at 1212-13 (citing 1 David Nimmer, Nimmer on Copyright § 1.01[B][1][e] at 1-24, n.110 (stating that if B is selling B's products and representing to the public that they are B's products, a claim by A that B's products replicate A's is a disguised copyright infringement claim and is preempted)). That claim is DISMISSED WITH PREJUDICE because under the theory Plaintiff has pled, Compl. ¶ 84, no facts would render Plaintiff's UCL claim not preempted as a matter of law. Plaintiff may seek leave to amend under Rule 15 if it wishes to assert a different theory of Defendants' liability under the UCL.

## V. CONCLUSION

For the reasons explained above, the Court GRANTS Defendant NVIDIA Corporation's motion to dismiss Plaintiff Metabyte Corporation's complaint. Plaintiff's CFAA claim is DISMISSED WITH LEAVE TO AMEND, and Plaintiff's UCL claim is DISMISSED WITH PREJUDICE. Plaintiff has thirty (30) days from this Order's signature date to file an amended complaint, or that claim may be dismissed with prejudice.

IT IS SO ORDERED.

Dated: April 22, 2013

UNITED STATES DISTRICT JUDGE

12